May I please the Court, Margaret Maxwell, Deputy Attorney General, on behalf of Appellant Warden Harrison, if I may, I'd like to reserve five minutes for rebuttal. Sure. In 2004, a panel of this Court concluded that the California courts unreasonably found no prima facie of racial discrimination in the use of print pre-challenges at trial and remanded this cause to the District Court for a hearing on step two of the Batson analysis. That hearing was conducted. The trial prosecutor indicated that she had no independent recollection of the jury selection, the jurors that were retained or dismissed. She did remember key aspects about the trial that took place. She also recalled some critical criteria that she used during jury selection. In this particular case? In this particular case. During the record, does it say that there were key factors that she considered in this particular case as opposed to factors she considers generally? At excerpts of record 220, from my perspective, it was a very straightforward trial. We had a tape of Mr. Paulino talking about what had happened. So in those situations, a lot happens on the believability of law enforcement. At excerpts of record 229. Wait, wait. What is that? How does that relate to her decision to strike the African-American prospective jurors? Well, in some, the most critical criteria was no anti-law enforcement bias. But where did she say that in the record in terms of her actions in this particular case? Again, what she said repeatedly was what she was focusing on at the trial. What she was concerned about in this particular trial was to make sure that since the primary evidence against Petitioner consisted of his statements to police, is that she wanted to make sure that there wouldn't be someone who had a bias against the officers such that  Okay. ER 220 doesn't say that. Where does it say in the record that she was interested in selecting someone without an anti-law enforcement bias? Well, again, she said at 229, a lot of my case depended on Mr. Paulino's statements and it was taken by law enforcement. At 231. Okay. Where does it say, it was important to me not to have anyone with an anti-law enforcement bias? It doesn't say that. Well, she didn't use those words, but that I think is the substance of what she said. So where do we infer that from all this, that that's what she did? Well, in essence, that's what she said. She didn't say those. That's what she said. I don't think Judge Rollinson is... But in common everyday practice in courts, you take what a witness says and you assess it as for what it means. The problem in this case is that she had no recollection of why she exercised peremptory challenges. So the difficulty is we're engaging in speculation regarding her reasons. And that's why it was important for the record to reflect either she generally applied certain factors or she recalled, in this particular case, applying certain factors. And that's the difficulty I see in this case, is that I don't see anything in the record that would allow us to ascertain what her reasoning was. Well, I think that brings us to the question of step two versus step three of the BAS analysis. The district court, although it said he was adopting the report and recommendation in its order, said that he thought the magistrate judge should have stopped at step two. And in essence, that's saying you stop at step two, you don't go to step three of the analysis. However, in a footnote in Johnson v. California, the U.S. Supreme Court had said that even if a prosecutor expressly declines to provide a reason, so there's no reason in the record, you still have to go to step three. How does that help you in this case? Well, that in conjunction, if I may, speak also about Yee v. Duncan, where there was an instance where the prosecutor immediately after trial, well, during the course of trial, could not recall a reason for excusing a juror, that in contrast to here where seven years have elapsed since the trial. This court, a panel of this court concluded that there was no error, there was no unreasonable application of Supreme Court precedent, and the California courts concluding that despite any recollection, any statement of reasons for that one juror, that no Batson claim was made by the defendant. He didn't meet his court at step three. Well, but in Yee, the court said a failure to present any reason is evidence of discrimination, so that meets step two. Well, actually, I think what that said in that opinion, and here's where I'm going to try to draw in Johnson v. Yee. Well, do you agree, though, that Yee said if there's no evidence, no explanation, that is evidence of discrimination? Did Yee say that? What Yee said, to my recollection, and I'm going to try to find it here just to be sure, was that the failure to provide a reason for any reason was something that could be considered in step three of the analysis. Did he say it is evidence of discrimination or not? Let me, I just want to make sure. A failure to satisfy this burden to produce, for whatever reason, becomes evidence added to the inference of discrimination raised by the prima facie jury. So it's evidence of discrimination. So that's step two. Right? Well, again, but we still get to step. Yes. But we still get to step. Is that step two? It is. We get to step three. Right. But we get to step three. And here, what we have in step three, where the Supreme Court has said that's where you make a credibility assessment. That's where you look to see what the real reasons were. If the real reason, the real reason was discriminatory. Well, how can you determine that if you have no evidence of the motive? Well, I think we have evidence of motive here. And the motive, the credibility assessment that was made by the magistrate judge, was that the prosecutor was a truthful and commendable prosecutor. The evidence you're hearing, the magistrate judge said you are a credit to your profession. I don't think he would say that if he thought she had exercised... He also said she couldn't remember anything at all. Well, he... She was being... That's why she was telling her she was being honest. Because she couldn't remember... That's true, she didn't... Anything about the reasons why she struck any of the particular jurors. She didn't turn around seven years later and... He says to her, he says to her in courtroom, he says, you know, your real problem, the real problem here is not you, and time has, unfortunately, happened many years ago. The problem was the superior court judge. That's true. Who said, who took it upon himself to provide reasons for the prosecutor. Why would he do such a thing? Well, I think because... He was fast. Well, he was fast. And... So, you know... You know, the jury selection occurred in less than a day. I, you know, to... He didn't want to be bothered. He was just fast. Well, I want to give him a little more credit than that. Well, fine. But look, you know, the potential here is that you're going to have to retry the case. Or somebody's going to have to retry it. Not you, probably. No, it won't be me. But, certainly, the L.A. District Attorney's Office is going to have to retry the case. And, you know, many years later. And that can pose grave difficulties. And that's why it's so important to do it right the first time. And I think that is absolutely true. I think everyone wishes we could go back in time and do it right the first time. But the trial judge, I think part of his being fast, part of the problem with not, you know, going with the statistical numbers and saying, hey, give me your reasons, where we'd probably not be here at this point. I see that as a very serious infraction. I mean, to just kick people off the jury because of their ethnicity. Oh, it's sort of... It's intolerable. That is... That is not to be tolerated. But... He even said, you know, the judge did say it doesn't look good. Yeah, he said it looks bad. But what he said was, and he's the only judicial officer who was there during the jury selection, watching what was happening and watching the dynamic. And I think part of his volunteering these reasons is basically his reflection that, you know, if you just go by numbers, it looks bad. But look at all of these, you know, reasons. But the difficulty is we don't have that. We don't have anything as a reviewing court. We have to have something on the record in terms of what the prosecutor, not what the judge thought. Because the judge was not exercising the peremptory challenges, it was the prosecutor. So what the judge thought really isn't the issue in terms of the prosecutor's motive. Well, true. And in Yee, in the instance where there was no explanation for this one particular juror, the California courts had looked at the trial record itself, looked at the record of the And we don't believe that the actual, the real reason was discriminatory because there are these reasons here that sort of abundantly demonstrate plausible, real reasons to get rid of these jurors. But if you look at the comparative evidence that the district court went into, that kind of pokes a hole into, you know, the reasons that were given, that was speculated on by the state judge. And again, the magistrate judge conducted a comparative analysis and the parties I think are in dispute as to whether the district judge adopted those, that comparative analysis. Again, the district court in its order said, you shouldn't go to step three. And it found the comparative analysis essentially contradictory with the credibility finding. I will pause. You know, I'm just going to, you know, the whole business about step one, step two and step three, it just provides a framework for analyzing the equal protection claim. That is, as the court said in Batson, the first two steps are essentially loosely referred to as burdens of production. So you've got to come forward with something. So the defendant needs to say, you know, raise a claim. This is, you're discriminating on the basis of an improper factor in point Y. And then if the judge says, yeah, then you have a framework for the, that the prosecutor then has to come back with some reasons. But ultimately in Batson, it's very clear in Batson, you go back to the source of this, that the burden is on the defendant to show by a preponderance of the evidence that the improper factor was the basis for, for the, for the exercising the peremptory. And we call them step one, step two, step three, but it's just a framework that works there. And if you look at what, carefully what the magistrate judge did, it's pretty clear, you know, he first found the, the, you know, we had found in our opinion that there was a prima facie case. So he started with that and then he said, okay, government, what's your, give us a reason. Nothing was presented. He then adds it all up and he says, you don't meet your, you know, there, there's nothing here for me but the prima facie case, which is compelling, which is strong. You add to that, no explanation. He looks, puts it all together and he said, you know, the defendant meets his burden. Well, I don't care, you know, it's not, you can talk about step two, step three and what the district court said. It really gets down to the framework and he did what, what Batson said you're supposed to do. Well, again, we dispute that. He didn't have the benefit of ye, ye was decided well after the magistrate's report and recommendation. The magistrate's report issued in January of 2006 and ye issued in September of 2006. So he didn't have the benefit of ye. There was some, I think, confusion expressed in the report recommendation whether he needed to go to step three. Ye explained again in a situation where there's no explanation for a reason that you still can look at the trial record for circumstantial evidence. I don't think that's what the magistrate judge was doing. I think what the magistrate judge was doing was saying, you know, we have this result. I feel that he felt that he should stop at step two, but then he went on to essentially narrowly view the trial record rather than view it in its entirety and completeness to do a comparative analysis that, that frankly isn't fair. For instance, he, he notes that one of the jurors who served on the jury, um, uh, you know, had, um, I think a son who had been, who served a prison sentence for drugs. On the record, uh, during the, the jury selection, and this is at, um, excerpts or record 116 to 117, that particular juror said their son went to prison for drugs and she thought it was a good thing because it straightened him out. Contrast that to a person who has a personal prostitution arrest, it's very vague about it, doesn't provide details. Someone who has, knows lots of people who've been arrested, again, during the questioning doesn't provide details, has to have it extricated that really, well, one of the people was her uncle who was, who had murdered her aunt. I just want to go back to what you said about what the magistrate judge did. I, I, I, you know, you said he didn't have the benefit of, of, uh, ye, and that may well be true, but he certainly looked carefully at Batson and all the other cases that existed at that time. And he said, he goes on, he finishes with step two, um, and he says, he's got a little subheading called step three. And he says, if a step three analysis is mandated, petitioner is still entitled to habeas relief. At step three, this court has the duty to determine if the defendant has established purposeful discrimination. In making this determination, this court must consider all relevant circumstances. Then he goes down and he talks about what we did and he talks about statistics and whatnot. Then he says, this evidence has not been rebutted by any evidence of an actual benign intent on the part of the prosecutor. And then he said, he cites, uh, Miller L. Then he says, without any evidence to influence the starkness of these disparities, this court is left with no option, but to find a Batson violation. I don't know, you know, what more, you don't like what he did, but it seems to me that he was following the, uh, design of Batson. Well, except that by the part that you just read, he, he found a Batson violation before he ever looked at the trial record, before he ever did the step three analysis. But he said he considered all the circumstances. Well, he, he says very clearly, he considered all the circumstances and the district court judge, he goes on to say, well, even if I were to get into all the, this judge, uh, uh, uh, Rawlinson just referred to the, the comparative juror analysis stuff. And this last, very last part of his opinion in the district court says, well, you know, that he really shouldn't have had to do all of that. But then he doesn't, you know, it's interesting. He just adopts the report. He doesn't, he doesn't say as amended or anything. He just adopts it. But it seems like it's pretty clear that they looked at everything. I think they, I think they tried to do what they should do given the information they had at the time. I think the magistrate judge there, I think it's ER 31. He has step three with a question mark is one of the headings. You know, I think he, he was trying to anticipate what would happen and there had been a lot of changes in Batson and the law over the last, since Petitioner's  So I think, I think everyone was trying to do their best. And the dispute that we have is whether, when did he have to look at the trial record? And when he looked at the trial record, when he looked at the, he looked at the percentage, uh, yes, the prosecutor didn't, um, have a recollection of, had a genuine lack of recollection of the reasons. And if you add that to the prima facie case, I think it's a minimal addition. A genuine lack of recollection can be a minimal addition to a prima facie case. In contrast to a situation such as postulated in Johnson, where if a prosecutor says, you know what, I know my reasons, but I'm not going to tell you what they are, I think you can infer from that, that they must be bad reasons. And in that sense, in the equation and in the arithmetic, I think you can, that's a big plus, an addition that goes into the third column, if you will. Counsel, let me ask you about Yi, um, since you rely so heavily on that, isn't that case a little different because, uh, it was a gender, uh, discrimination case and the, there were, I think there were eight men who were, uh, stricken from the jury with the peremptory, peremptory challenges. And the prosecutor gave gender neutral reasons for striking seven and could only, and only, uh, failed to remember regarding one. So isn't that a little different than when you have no recollection regarding any of the, um, members that were stricken? I think that's a little different. It's certainly different. It's, it's a matter of degree. It's do not remember one, do not remember one, uh, you know, immediately after you've been engaging in this analysis, when you should have your notes in front of you, when you would think you should be able to construct a reason to excuse someone versus seven years later when the notes don't exist. That's a little different case. When you say, well, I can give you reasons for, uh, seven out of eight. I didn't write down my notes for the eighth one, as opposed to, I don't remember anything about any of them. It's a, I think it's a little different case. It is a different case. Yes, it is. Thank you. Okay. Thank you. May it please the court, Catherine Froyan for Delbert Paulino. I'd like to start by just addressing the point that respondent just made about arithmetic, which is that in the context of this case, the district court made a determination of purposeful discrimination and made that determination based on the prima facie case and the absence of any evidence of race neutral reasons at step two of Batson. Importantly, the district court in this case found that the prima facie case was supported by a preponderance of the evidence. And it's true under United States Supreme court law that a, an opponent of a strike making a Batson challenge does not have to demonstrate a prima facie case by a preponderance of the evidence. In this case, the district court found that Mr. Paulino had taken in connection with the step two, what all of the evidence that was adduced at the evidentiary hearing, the prima facie case plus the lack of evidence of step two reached the level of purposeful discrimination by a preponderance of the evidence. That was, that was, that happens regardless of what, of the absence of evidence at step two is essentially a zero. When added to the prima facie case, which in this case was supported by a preponderance of the evidence, you essentially have at least 51% plus zero. And that only conclusion to be reached there is that Mr. Paulino has demonstrated purposeful discrimination in jury selection by a preponderance of the evidence. The magistrate judge gave it the absence of any neutral factor reasons. He gave it more than zero. I think that he did. But importantly, even if it was only zero, Mr. Paulino would still win. They made a very strong prima facie case. It was a very strong prima facie case. It was supported by, the statistics were that the prosecutor used five out of six peremptory strikes to remove African Americans from Mr. Paulino's jury panel. And the magistrate judge went on to find that the pattern of making the strikes was also evidence of discriminatory purpose. When they were utilized. When the strikes were made. So the prima facie case in this case is very strong. What the, what this court did in 2004 was remand the case to the district court with expressed instructions to hold a hearing to determine if the prosecutor, if the state could come forward with any evidence of race neutral reasons for the apparently biased pattern of the strikes. The district court held a hearing. At the hearing, the state was unable to come forward with any evidence, direct or circumstantial of race neutral reasons for the strikes. What's your response to opposing counsel's reliance on ye for the proposition that failure to remember or to recall the reasons does not equate to discrimination? I think failure, I think that ye, I think that ye can stand for the proposition that at, at step two, a failure to remember can be some evidence of discrimination. That comes, ye is interpreting footnotes, footnote six of the Johnson versus California case and Johnson versus California addresses the situation where at the time of trial, a prosecutor refuses to give reasons for the peremptory strikes that are being challenged. And, and the court in Johnson said that a district, that a trial court trying to make a determination of whether a bouts and violation has occurred can, can consider that refusal to give reasons as evidence of discrimination. This wasn't a refusal. This was an inability to recall what happened. That's right. This is a slightly different situation for me. And I think that that means that ye is actually fairly No, Johnson is the one where there was a refusal. Ye was also an inability to recall. And the court in that case found that there was not a denial of equal protection. So why doesn't ye result in a similar finding in this case? Well, ye is, ye is a different situation on, on many levels. But the first, which I believe has already been mentioned here, is that the situation in ye was that a prosecutor at immediate, upon being questioned immediately after having exercised seven peremptory strikes against men was asked to give reasons for all seven. And with regard to one of the strikes had a lapse of memory. That is a very different situation from here because here the prosecutor had a complete lapse of memory. There was absolutely no recollection. Now, I think another important distinction is that we're talking about a, a reconstruction hearing here. This, this case, the prosecutor was not asked at the time that she exercised the strikes to give the reasons on the record. So she was going back many years later, trying to reconstruct her reasons. And the district court concluded after conducting a very searching inquiry that it was simply impossible to do so. Was it ye also an AEDPA case? That's right. The, another, we are, we said in 2004 that we're not bound by the deference under AEDPA in this case. That's right. That's a, yet another distinguishing factor of ye is that there was a very stringent standard of review. And this court simply found that the court was not wrong to look at all of the evidence in that case and determine that at step three, it wasn't unreasonable. That's right. That's right. Not wrong because that would be de novo. That's right. It was not an unreasonable. It was not objectively unreasonable. And here we're looking at a very different situation. And the district court, I think this court has, has already emphasized that district court did make, did the district court made an, made a determination that purposeful discrimination had, that's a factual finding, that's a factual finding. You can't set that aside unless it's clearly erroneous. That's right. And in this case, it is not clearly erroneous. The district court made, there's, there really isn't a way to read the record in this case and find that there was evidence to rebut the showing of, of discrimination made at step one, the prima facie showing, which was in this case supported by purposeful discrimination. And I think it's fair to conclude that the magistrate judge and the district court considered all of the evidence that it could in coming to that conclusion. It was simple. It was unfortunate that the passage of time made the record not, not a perfect record, not one, not an ideal record from which to make a conclusion. But at the end of the day, both the magistrate judge and the district court did make a conclusion that purposeful discrimination in jury selection had been shown by a preponderance of the evidence. I just want to take a moment to, um, and to emphasize that, that in doing so, the court was, the district court was following this first directive in the first Paulino decision that what's important here is actual reasons, actual race neutral reasons for the strike. So it could not give much weight, if any, to speculation. In addition, the district court made a very careful analysis of even the by the trial record in this case. It's simply unfair to accuse the district court of ignoring or not paying attention to the evidence in the trial record because the courts below conducted a very careful analysis of that record, but concluded that all it contained was speculation and that under this court's case law and United States Supreme Court case law, speculation simply is not enough. The district court did find the prosecutor's lack of recollection to be credible and credited the prosecutor for testifying honestly at the hearing. That does not equate to a finding that she did not discriminate in the selection of the jurors. And the district court, the magistrate judge who had, who held the hearing said as much when he commented, it's not my job to look at her now and say, she's okay, she's a good and decent prosecutor. And because of that, I don't think she would have used race. That is not appropriate because that's not the analysis. And I think that the magistrate judge was correct in saying that because it, while it is commendable that the prosecutor did not lie at the evidentiary hearing, it does not show that she did not use discriminatory motive in, in striking potential jurors from Mr. Polino's jury panel. I think that, um, just very briefly to address the state's argument that the district court did not adopt the report and recommendation, all of the factual findings that this court needs to affirm the judgment are in the record. The district court adopted and accepted them all in its, uh, report.   In its order, accepting and adopting the report and recommendation. It did not reject any of the findings to the extent that this court would disagree. It would not necessitate, it could still affirm the judgment because importantly, there's only one result here. And I think this is what the magistrate judge commented on in conducting several different analyses of the evidence in this case. He said the result would be the same regardless of whether he ended the inquiry at step two or ended the inquiry at step three. At step three, he conducted two slightly different analyses. He, he looked at the strength of the prima facie case and considered that in connection with the absence of evidence of race neutral regions at step two and concluded that that, um, mandated a finding that Mr. Polino had proven racial discrimination in jury selection and was entitled to a new trial. Additionally, he went on to conduct a comparative analysis of the speculative reasons, and he said that even if he were to consider those reasons, the actual reasons for the strikes, he would still find that Mr. Polino had proven racial discrimination in jury selection because those reasons proved themselves to be pretextual based upon a reading of the transcript. The, to the extent that the district court disagreed with the finding that, that disagreed with the fact, with the magistrate's feeling that it was necessary to go on and find that the reasons, if they had been the actual reasons, would have been pretextual, he concluded that may have been unnecessary. And, and that's correct. If there were no actual reasons for the strikes, the magistrate judge, the district court was not required to give weight to pure speculation and to find that the speculation itself, uh, the speculative reasons were themselves pretextual or unnecessary gloss on what was already a sufficient finding to support a conclusion of purposeful discrimination, a step three finding of purposeful discrimination in jury selection. That doesn't undermine the outcome in this case. And importantly, that is what the magistrate judge and the district court judge concluded is that regardless of which way you looked at the evidence, the result would be the same. Mr. Polino's, uh, case was remanded because it, to give the state an opportunity to come forward with evidence of a race neutral reasons for the apparently biased pattern of strikes, which resulted in 83% of the strikes being used to remove African-American jurors. The state had every opportunity to come forward with evidence. At the end of the day, it could not. And the conclusion that the district court reached was that Mr. Polino, there could be no confidence that Mr. Polino had received a fair trial, that there was discrimination in the selection of his jury, which goes to his fundamental rights under the equal protection clause. The, this is a fairly straightforward application of Batson principles in this case leads to one conclusion that Mr. Polino is entitled to a new trial. And I asked this court to affirm the lower court judgment. Thank you. Yes. Some rebuttal. One minute, 41 seconds. In essence, the step three analysis, the problem with the step three analysis that was undertaken is its failure to, uh, to truly look completely at the trial record, the prima facie case. Do we have, you know, you would agree though. Wouldn't you that, uh, the finding of purposeful discrimination is a factual finding. It was a fact. I believe the magistrate judge made a factual finding. I dispute that the district court. And you want it. And you're telling us that it's not support, you know, that it's clearly erroneous in light of this record. Well, I think here's what I'm saying. It's step two. You have to produce, there's something if nothing's produced to go forward, but step three, you don't stop at, uh, statistics, uh, the coincidental order of how people ended up in a box, uh, for jury selection. You have to look at the totality of the trial record. If you're going to say the prosecutor doesn't remember anything, then maybe you can't hold those reasons against her, but you can still look at the trial record and determine where the people who were excluded, were there legitimate race neutral reasons? Were you just engaging in speculation? Well, no, because the trial record, the trial judge recognized those reasons. You don't know what her actual reasons were. We don't, we don't know what those reasons are. Thank you for your time. We appreciate it. And we respectfully ask that you revert to the judgment. Okay. Thank you. We, you know, we do appreciate the counsel's arguments from the state and from, on behalf of the petitioner. We'll submit the case.
judges: Paez, Rawlinson, Conlon